Opinion issued December 21, 2006














In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00427-CV






BRENDA JOYCE GAINOUS, Appellant


V.


THOMAS EARL GAINOUS, Appellee






On Appeal from the 246th District Court

Harris County, Texas

 Trial Court Cause No. 1994-18001






CONCURRING OPINION ON REHEARING


 I withdraw my dissenting opinion issued August 24, 2006 and substitute this
concurring opinion in its stead. I join the opinion of the panel on rehearing. I write
separately to express my reasons for concluding that the divorce decree awarded
Brenda a vested interest in one-half of the total amount of Thomas's future contingent
interest in the Houston Firemen's Relief and Retirement Fund ("the Fund"). 

Clarification of the 1995 Divorce Decree

 The Gainouses' divorce decree, entered in 1995, provided that, as part of "a
just and right division of the parties' marital estate": 

 [BRENDA] is awarded the following as [her] sole and
separate property, and [THOMAS] is hereby divested of all right,
title, interest, and claim in and to such property:


 . . . .



 One-half (1/2) of the Houston Firemen's Relief and
Retirement Fund standing in the name of THOMAS E.
GAINOUS.



The trial court orally rendered judgment construing the divorce decree as awarding
Brenda one-half of Thomas's interest in the Fund "as of the date of divorce."

 Brenda contends that the plain language of the 1995 divorce decree awarded
to her at the time of the divorce, as her separate property, a present one-half interest
in the future contingent retirement benefits standing in Thomas's name in the Fund,
to become effective at the time of Thomas's retirement, apportioned to the years of
marriage during which those future benefits were accruing, including her portion of
(1) Thomas's Deferred Retirement Option Plan ("DROP") funds, (2) Cost-of-Living-Adjustment ("COLA") benefits earned during the marriage, (3) a one-time $5,000
lump-sum payment made at Thomas's retirement, (4) a $150 supplemental payment,
and (5) an annual supplemental payment benefit called the "13th-benefit payment." (1)

 Thomas contends that the disputed benefits were properly denied by the 1996
Qualified Domestic Relations Order ("QDRO") because the decree awarded Brenda
only one-half of the retirement benefits present in the Fund as of the date of the
divorce. He argues that his DROP account, COLAs, 13th-benefit payments,
supplemental payment, and lump-sum payment all constitute future contingent
benefits that were not part of the community estate divisible on the date of the divorce
because not even a contingent, unvested entitlement to those specific benefits existed
until after the divorce; thus, he argues, they constitute his separate property under the
terms of the decree and are not divisible. (2) 

 The task for this Court, therefore, is to determine, as a matter of law, (1)
whether Brenda's half of Thomas's interest in the retirement plan, awarded to her at
the time of divorce, was a present one-half interest in future contingent retirement
benefits to be valued when those benefits actually accrued and were received in
Thomas's name in the Fund or (2) whether the half of Thomas's retirement benefits
distributable to Brenda when the assets matured and were received in the Fund was
limited by the terms of the 1995 divorce decree to one-half of Thomas's share of the
benefits available to firefighters eligible to retire in 1995, valued as of 1995.

 Terms of the Gainouses' 1995 Divorce Decree

 "When interpreting a divorce decree, courts apply the general rules regarding
construction of judgments." Shanks v. Treadway, 110 S.W.3d 444, 447 (Tex. 2003). 
"Judgments should be construed as a whole to harmonize and [to] give effect to the
entire decree." Id. "[I]f the decree, when read as a whole, is unambiguous as to the
property's disposition, the court must effectuate the order in light of the literal
language used." Id. (quoting Wilde v. Murchie, 949 S.W.2d 331, 332 (Tex. 1997)). 
"If the decree is ambiguous, the court should review the record along with the decree
to aid in interpreting the judgment." Id. If the decree is "subject to more than one
reasonable interpretation," the court "should adopt the construction that correctly
applies the law." Id. "[W]hether a divorce decree is ambiguous is a question of law." 
Id.

 The literal language of the divorce decree in this case awards Brenda as her
separate property, as of the date of divorce, a present vested interest in "[o]ne-half
(1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of
THOMAS E. GAINOUS." As of the date of divorce, there were no accrued and
matured retirement benefits standing in Thomas's name in the Fund. Nor does
anything in the language of the divorce decree limit Brenda's award of Thomas's
future contingent retirement benefits to one-half of the type of retirement benefits
available to firefighters who retired in 1995 or to the value of those particular assets
as of 1995. Therefore, Brenda was necessarily awarded a future contingent interest
in the total amount of Thomas's retirement benefits when they vested and became
available for distribution as his portion of the Fund, i.e., at his retirement. This
conclusion is supported by well-established Texas law.

 Treatment of Future Contingent Retirement Benefits Under Texas Law

 Neither Texas statutory law nor common law either expressly or implicitly
prohibits trial courts from awarding in a divorce decree future contingent benefits
earned during the marriage. To the contrary, under established Texas law, unaccrued
and unmatured retirement benefits earned wholly or partially during marriage
"constitute a contingent interest in property and a community asset subject to
consideration along with other property in the division of the estate of the parties
under [the predecessor to section 7.001] of the Family Code." Cearley v. Cearley,
544 S.W.2d 661, 666 (Tex. 1976); see also Taggart v. Taggart, 552 S.W.2d 422, 423
(Tex. 1977). Such "retirement benefits are subject to division as vested contingent
community property rights even though the present right has not fully matured." 
Taggart, 552 S.W.2d at 423; see also Trahan v. Trahan, 894 S.W.2d 113, 119 (Tex.
App.--Austin 1995, writ denied) ("[M]ilitary retired pay is subject to division upon
divorce as a vested community property right even if the present right to the pay had
not fully matured.").

 In Cearley, the divorce decree awarded the former wife a fractional interest in
the former husband's future military retirement benefits if and when he received
them. Cearley, 544 S.W.2d at 661. In determining that the division of those future
contingent benefits should be made effective as of the date of retirement, the supreme
court stated, "The administration of justice will best be served if contingent interests
in retirement benefits are settled at the time of divorce, even though it may be
necessary in many instances for the judgment to make the apportionment to the
nonretiring spouse effective if, as, and when the benefits are received by the retiring
spouse." Id. at 666. The court explained that this method "will forego the difficulty
of computing a present value and will fairly divide the risk that the pension may fail
to mature." Id. 

 The supreme court has never overruled Cearly or determined that future
contingent benefits cannot be awarded at the time of divorce. To the contrary:
Cearley is still good law. Subsequently, however, in Taggart, the supreme court was
faced with the problem of a divorce decree that divided community property, but
failed to divide future contingent retirement benefits that had accrued during the life
of the community. Taggart, 552 S.W.2d at 423. The court, therefore, developed a
formula for courts to use in determining the community's interest in the employed
spouse's future contingent retirement benefits and the non-employee spouse's share
of that interest when the decree fails to apportion those benefits. See id. at 423-24. 
Because the Taggarts' marriage coincided with 246 of the 360 months that George
Taggart had to serve in the Navy to receive retirement benefits, the court awarded
Ann Taggart "one-half of 246/360th's of the retirement pay" actually received by
George. Id. at 424. 

 In Berry v. Berry, 647 S.W.2d 945, 947 (Tex. 1983), the supreme court
retrenched on the Taggart formula. In Berry, as in Taggart, the divorce decree was
silent as to the division of the husband's future contingent retirement benefits. Id. at
945. The former wife later brought suit to collect her community share of those
benefits, and the trial court awarded her "one-half of such benefits as would have
existed at the time of divorce" had her former husband then been eligible for
retirement. Id. The supreme court affirmed the judgment of the trial court. Id. It
held that, in a case in which the divorce decree is silent as to the division of future
contingent retirement benefits, the non-employee spouse should be awarded one-half
of such future benefits "as would have existed at the time of divorce," apportioned
to the years of the marriage, as in Taggart, but, unlike Taggart, also valued at the
time of the divorce. Id. at 945, 947. It reasoned that a court could not properly divide
a future contingent interest in the employed spouse's separate property, i.e., in the
benefits that accrued by that spouse's labor after the divorce or that became available
to plan retirees after the divorce. Id. at 947. However, the court expressly stated that
its opinion was "not to be understood as overruling Taggart v. Taggart . . . or
disapproving of its progeny . . . insofar as those opinions approve an apportionment
formula for determining the extent of the community interest in retirement benefits,"
i.e., as proportional to the years of marriage vis a vis the years counted towards the
retirement benefits. Id. (emphasis in original) (citations omitted). 

 Since developing the Taggart/Berry formula for judicially apportioning future
contingent retirement benefits not divided in a divorce decree, the supreme court has
twice considered whether to apply the Taggart/Berry formula in interpreting a
divorce decree that is not silent as to the division of future contingent retirement
benefits, but expressly apportions those benefits in terms inconsistent with the
Taggart/Berry formula. See Shanks, 110 S.W.3d at 447-48; Reiss v. Reiss, 118
S.W.3d 439, 440-43 (Tex. 2003). 

 In both Shanks and Reiss, rather than impute to the divorce decree the
Taggart/Berry formula for apportioning future contingent retirement benefits, the
supreme court interpreted the decree according to its literal terms--even though, in
both cases, the divorce decree awarded to the non-employee spouse an unqualified
interest in future contingent retirement benefits and, thereby, necessarily awarded that
spouse a portion of the employee spouse's post-divorce benefit increases that were
properly construed as separate property. See Reiss, 118 S.W.3d at 441-42 (holding
that decree that awarded wife 50% "of such retirement or pension benefit to which
[husband] . . . is entitled to receive" if and when he retired or was otherwise entitled
to benefits "unequivocally awards [former wife] half of [former husband's] total
retirement benefits under the plan, regardless of when they accrued," despite other
language in decree referring to division of community property); Shanks, 110 S.W.3d
at 447-48 (holding that unappealed divorce decree that provided that non-employee
former wife was to receive "a 'pro rata' interest . . . of any and all sums received or
paid to [employee former husband] from such pension [or retirement] plan"
unambiguously awarded former wife pro rata portion of former husband's total
retirement benefits, rather than pro rata portion of community-property portion of
those benefits). (3) The court emphasized in Shanks that "the trial court awarded [the
former wife] an interest in all sums received under such plan, not an interest of
presently accrued benefits under such plan." Shanks, 110 S.W.3d at 448 (emphasis
in original and added). 

 The court opined in Shanks:

 The fact that the plan's value may have increased since the divorce does
not affect the decree's plain language, which simply cannot reasonably
be construed to award [the non-employee spouse] an interest only in the
plan benefits that had accrued on the date of divorce. Whether
intentional or not, the court that entered the decree failed to limit the
community interest pursuant to the Taggart apportionment fraction and
instead clearly gave [the non-employee spouse] a twenty-five percent
interest in the total amount (whatever that might be) to be paid to [the
employee spouse] under the plan.


Id. Similarly, in Reiss, the supreme court acknowledged that by awarding the wife
half of her husband's total retirement benefits "if and when" he retired, the trial court
had mistakenly classified all of the former retirement benefits as community property,
rather than as part separate property and part community property, and had thus
mistakenly awarded the former wife a portion of her former husband's separate
property. 118 S.W.3d at 442. Nevertheless, in both cases, the court concluded that,
although the trial court's mistake in awarding to the former wife a portion of her
former husband's separate property made the decree voidable if timely appealed, the
decree was not void "because a court has jurisdiction to characterize community
property--even if it does so incorrectly"; thus, absent a timely appeal, the judgment
became final and could not be collaterally attacked. Id. at 443; see Shanks, 110
S.W.3d at 449.

 Here, as in Reiss and Shanks, the divorce decree expressly divided the total
amount of Thomas's share of the Fund, awarding Brenda at the time of divorce a
vested interest in "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement
Fund standing in the name of THOMAS E. GAINOUS," when a portion of the Fund
was actually allocated to Thomas, rather than apportioning her interest according to
the years of the marriage as under the Taggart/Berry formula. The decree did not
limit the portion of Thomas's retirement benefits distributable to Brenda at his
retirement to the type of benefits available to retirees at the time of the divorce in
1995 or to the value of such benefits in 1995, even though, had the parties intended
to apportion Brenda's interest in Thomas's share of the Fund to the years of the
marriage or to limit her interest in Thomas's share of the Fund to the value of his
interest had he been eligible to retire in 1995, they could have done so. See Hurley
v. Hurley, 960 S.W.2d 287, 288-89 (Tex. App.--Houston [1st Dist.] 1997, no pet.)
(holding that language that wife was to receive "'one-half (1/2) of [appellant's]
retirement benefits in the Mars Retirement Plan if, as and when received by [him]' 

. . . is unambiguous, and it is fatal to appellant's claim that the benefits were to be
valued at the time of divorce"). 

Conclusion


 Accordingly, I join in the panel's opinion and conclusion that, under its literal
language, the divorce decree awarded Brenda at the time of the divorce a future
contingent interest in "[o]ne-half (1/2) of the [total amount of the] Houston Firemen's
Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS" at the
time of his retirement, including a one-half interest in the DROP funds; the COLAs;
the one-time, lump-sum payment of $5,000; the $150 monthly supplemental payment;
and the 13th-benefit payment.





 Evelyn V. Keyes

 Justice



Panel consists of Justices Taft, Keyes, and Hanks.

Justice Keyes, concurring.

Justice Hanks, concurring in the judgment.
1. Each of these benefits was provided, like Thomas's entire interest in the Fund,
pursuant to article 6243e.2(1) of the Texas Revised Civil Statutes, governing
firefighters' benefits. See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1) (Vernon Supp.
2006).
2. Thomas pointed out that section 804.003(g)(7) of the Government Code
expressly provides that a public retirement system may reject a QDRO that
purports to award "future benefit increases that are provided or required by the
Legislature." Tex. Gov't Code Ann. § 804.003(g)(7) (Vernon 2004). As our
opinion explains, however, section 804.003(g)(7) applies to QDROs--not to
divorce decrees. See id. There is no such limitation on divorce decrees.
3. The Shanks decree awarded the wife "a 'pro-rata interest' . . . of any and all sums
received or paid to" the husband from his pension plan. Shanks v. Treadway, 110
S.W.3d 444, 445 (Tex. 2003). It defined "pro-rata interest" as "25% of the total sum
or sums paid or to be paid to [husband] from such pension or retirement plan." Id.